SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-7775-RGK (MCx) | Date | April 20, 2005 |
|---|---|---|---|

| Title | *RADCLIFF DONGELL LAWRENCE LLP v. RICHARD DONGELL, et al.* |
|---|---|

Present: The Honorable  R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) DEFENDANT'S MOTION TO DISQUALIFY STEPHAN, ORINGHER, RICHMAN & THEODORA FROM REPRESENTING RADCLIFF DONGELL & LAWRENCE LLP AND FOR DISGORGEMENT OF FEES (DE 30)

## I. FACTUAL BACKGROUND

The law partnership of Radcliff Dongell Lawrence LLP ("Plaintiff" or "RDL") sued Richard Dongell ("Dongell"), John Lawrence ("Lawrence"), Matthew Bures ("Bures"), Jason Booth ("Booth"), Thomas Vandenburg ("Vandenburg"), Gilda Gil, Hamid Kiaei, Molly Shields, and Does 1-10 (collectively, "Defendants") for intentionally exceeding their authorized access to RDL's computers in violation of 18 U.S.C. § 1030.

On March 5, 2004, Dongell, Lawrence, Bures, Booth, and Vandenburg, all partners of RDL, withdrew from RDL because Jules G. Radcliff ("Radcliff"), the founding partner, would not allow them to access or inspect the financial records of RDL. Radcliff, the sole remaining partner, owned a seventy percent interest in RDL at the time the partners withdrew. Dongell owned the other thirty percent interest in RDL. Three days later, on March 8, 2004, Dongell, Lawrence, Bures, Booth, and Vandenburg (the "former partners"), represented by the law firm of Gardner & Booth, sued Radcliff for partnership accounting in the Superior Court of California. On April 26, 2004, Radcliff, represented individually and as general partner of RDL by Freeman, Freeman & Smiley LLP, sued the former partners for partnership dissolution and winding up in the Superior Court of California. These lawsuits were consolidated for partnership dissolution and winding up.

Nearly five months later, on September 20, 2004, Radcliff brought in Stephan, Oringher, Richman & Theodora, P.C. ("Stephan Firm") as counsel of record for the state court lawsuit. Also on September 20, 2004, the Stephan Firm filed the current lawsuit on behalf of Plaintiff. On March 17, 2005, Dongell filed the current motion to disqualify the Stephan Firm and for disgorgement of fees. Four days later, on March 21, 2005, Radcliff substituted the law firm of Revere & Wallace for the Stephan Firm in the state court lawsuit.

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | | Page 1 of 3 |
|---|---|---|---|

## II. JUDICIAL STANDARD

### Disqualification Of Attorneys For Conflicts Of Interest

Disqualification of attorneys is a decision that rests within the discretion of the district court. *See Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1324-25 (9th Cir. 1976); C.D. Cal. L.R. 83-3.1.2 (attorneys shall "comply with the standards of professional conduct required of members of the State Bar of California). However, motions to disqualify attorneys are strongly disfavored in federal courts, as they "often pose the very threat to the integrity of the judicial process that they purport to prevent." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (quoting *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 300-01 (1989)). Moreover, motions to disqualify attorneys "are often tactically motivated; they tend to derail the efficient progress of litigation." *Id.* Thus, the court must weigh:

> [T]he combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*Allen v. Academic Games Leagues of America, Inc.*, 831 F. Supp 785, 789 (C.D. Cal. 1993) (quoting *In re Lee G.*, 1 Cal. App. 4th 17, 26 (1991)).

## III. DISCUSSION

### Disqualification Of The Stephan Firm Is Improper

Dongell argues that the Stephan Firm should be disqualified under rule 3-310(C) of the CRPC because Dongell did not give informed written consent to concurrently represent Radcliff in a California State court lawsuit and RDL in this action. Plaintiff contends that rule 3-310(C) of the CRPC is inapplicable because the Stephan Firm never represented Dongell as its client. For the reasons below, this Court agrees with Plaintiff.

To disqualify an attorney or law firm under rule 3-310(C) of the CRPC, an attorney or law firm must concurrently represent multiple clients with adverse interests. *See* Cal. Rules Prof. Conduct 3-310(C). Rule 3-310 of the California Rules of Professional Conduct ("CRPC") prohibits attorneys from concurrently representing clients with adverse interests unless the clients give their informed written consent. Without informed written consent, however, even when the "simultaneous representations may have nothing in common . . . disqualification may nevertheless be required." *Flatt v. Sup. Ct. of Sonoma County*, 9 Cal. 4th 275, 284 (1994). The California Supreme Court notes that, "[i]ndeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." *Id.* If one of the clients is a partnership, "the attorney for the partnership represents all the partners as to the matters of partnership business," *Responsible Citizens v. Sup. Ct.*, 16 Cal. App 4th 1717, 1727 (1993), but there is no bright line indicating that "a partnership attorney *always* represents the partners." *Id.* at 1731 (emphasis in original). As a matter of law, representation of an individual partner is determined by the existence of an attorney-client relationship, "created by some form of contract, express or implied, formal or informal." *Id.* at 1732. The distinction between express and implied in fact contracts "relates only to the manifestation of assent." *Id.* at 1733. Thus, in order to determine whether the attorney has established an attorney-client relationship with an individual partner, thereby manifesting assent to represent his or her personal interests, the court may weigh, along with any other factors: (1) the type and size of the partnership; (2) the nature and scope of the attorney's engagement by

the partnership; (3) the kind and extent of contacts, if any, between the attorney and the individual partner; and (4) the attorney's access to partnership information relating to the individual partner's interest. *Id.* Generally speaking, "primary attention should be given to whether the totality of the circumstances, including the parties' conduct, implies an agreement by the partnership attorney not to accept other representations adverse to the individual partner's personal interests." *Id.*

Applying the first *Responsible Citizens* factor, the existence of a smaller firm size usually suggests individual representation of its partners. *See Johnson v. Sup. Ct.*, 38 Cal. App. 4th 463, 476 (1995) (representation of a partnership with "scores or even hundreds" of partners would not suggest an individual representation of partners). However, Dongell cannot "participate in the management and conduct of the partnership business." *See* Cal. Corp. Code § 16603. Thus, this factor does not weigh in favor of finding a duty for the Stephan Firm to represent Dongell's interests because Radcliff is the only remaining partner who has decision-making ability.

In addition, the nature and scope of the Stephan Firm's engagement weighs against finding an attorney-client representation. RDL has a partnership interest in maintaining the integrity of its electronic accounting records. The Stephan Firm agreed to represent RDL's interest, which is unrelated to Dongell's thirty percent equity interest.

Moreover, the kind and extent of contacts between the Stephan Firm and Dongell weigh against the existence of an attorney-client relationship. The Stephan Firm, through Radcliff, filed a state court lawsuit against Dongell. The Stephan Firm also represents RDL in this lawsuit against Dongell himself. Both of its representations are directly adverse to Dongell, again negating the implication of individual representation.

Finally, and most importantly, the totality of the circumstances does not imply an agreement by the Stephan Firm to refrain from accepting other representations adverse to Dongell's equity interest in RDL. Radcliff's state court dissolution proceeding required the Stephan Firm to represent Radcliff as its client, not to represent Dongell's equity interests. Thus, the Stephan Firm's duty is to Radcliff, not Dongell. Moreover, the Stephan Firm's representation of RDL in this lawsuit, again adverse to Dongell, does not imply an agreement with Dongell to represent his equity interests in RDL.

Weighing the factors above, the Court finds no factual basis for an attorney-client relationship between the Stephan Firm and Dongell, and thus, the Stephan Firm cannot concurrently represent adverse clients because it never established an attorney-client representation with Dongell. Therefore, the Court refuses to disqualify the Stephan Firm for concurrently representing adverse clients, and thus, **denies** Dongell's motion. Moreover, the Court refuses to disgorge RDL's attorney fees paid to the Stephan Firm.

## IV. CONCLUSION

In light of the foregoing, the motion for disqualification and for disgorgement of fees is **denied.**

**IT IS SO ORDERED.**

Initials of Preparer    slw